UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

v.                                              Criminal Action No. 2:04-CR-98-1

Kathryn Keough

REPORT AND RECOMMENDATION
(Doc. 89)

Kathryn Keough, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct a sentence imposed in 2006 in this Court as a consequence of her conviction for one count of mail fraud, in violation of 18 U.S.C. § 1341. In her petition, Keough does not claim actual innocence. Nor does she assert that her sentence of probation was constitutionally infirm or unfair. Rather, she only seeks to vacate that portion of an amended criminal judgment which imposed an order of restitution in the amount of $292,643 pursuant to 18 U.S.C. § 3663A. Keough, who has satisfied her sentence of probation, asks this Court to "vacate restitution being paid to Mr. Robert White + Tona White (wife)." Alternatively, Keough proposes that she be permitted "to do a volunteer project instead." (Doc. 89, p. 14.)

For the reasons set forth below, I recommend that Keough's §2255 motion be denied. However, as discussed below, I further recommend that Keough's most recent filing (Doc. 100) be construed as a motion for a modification of her restitution payment

1

schedule, consistent with 18 U.S.C. § 3664(k).

**I.     Prior Proceedings**

The records of this Court reveal the following events.  On July 14, 2004 an eleven-count indictment was filed alleging that Keough and co-Defendant Peter Liska, her husband, had defrauded numerous clients of their home interior design business.  In essence, the indictment alleged that Keough and Liska unlawfully converted to their own use customer funds remitted to them by their customers to purchase furniture and other household items.  The specific counts in the indictment charged Keough and Liska with inducing interstate travel and using the United States mails and interstate wire communications in the execution and concealment of their scheme to defraud their customers. (Doc. 1.)  Although there were eight sets of victims specified in the narrative of the scheme to defraud set forth in the indictment, a later presentence report revealed that the largest losses were sustained by customers Robert and Tona White.  Those offenses were described in Counts 2-8 of the indictment.

Both Defendants were represented by counsel at all stages of the proceedings.  On June 7, 2006, plea agreements signed by both Defendants were filed in the District Court (Docs. 55 and 56) which called for Keough to enter a plea of guilty to one count of mail fraud set forth in Count 11 and for Liska to plead guilty to the violation of the Travel Act set forth in Count 8.  In her plea agreement, Keough acknowledged that pursuant to 18 U.S.C. § 3663A, "this is a case requiring mandatory restitution."  The plea agreement specified that there were eight victims within the meaning of the restitution statute,

including Robert and Tona White. However, the plea agreement was silent with regard to the *amount* of the restitution owed to the eight victims by Liska and Keough. (Doc. 55, p. 5.) The plea agreement provided that the remaining ten Counts would be dismissed at the time of sentencing.

Also on June 7, 2006, a change of plea proceeding pursuant to Rule 11 of the Federal Rules of Criminal Procedure was held by Chief U.S. District Judge William K. Sessions III. Chief Judge Sessions inquired of Keough if she had reviewed the plea agreement with her attorney, whether she understood the agreement, and whether she was entering into the agreement voluntarily. The Court also inquired if Keough understood that she would be required to make full restitution. Consistent with the terms of her written agreement, Keough entered a plea of guilty to Count 11 of the indictment. Count 11 alleged that Keough had engaged in fraud by mail by mailing a letter on September 19, 2002 to a customer, Barbara Ciongoli, indicating to Ms. Ciongoli that Keough was ready to place a furniture order, and that Keough thereupon caused the charging of $4,600 on the credit card of Ms. Ciongoli's daughter-in-law for furniture Ms. Ciongoli ultimately never received, in violation 18 U.S.C. § 1341.

While Keough acknowledged understanding that she would be responsible for a restitution obligation to the eight victims, there was no discussion at the Rule 11 proceeding concerning the amount of the restitution or the manner in which Keough would satisfy the obligation. (Doc. 93, p. 15.) Concluding that Keough's plea was voluntary, was entered with an understanding of the consequences, and had a basis in

3

fact, the District Court accepted Keough's plea of guilty to Count 11 and ordered the preparation of a presentence report. (Doc. 93, p. 36.)

A presentence report ("PSR") was submitted to the court in anticipation of sentencing. The report concluded that with regard to imprisonment, Keough faced an advisory Sentencing Guideline range of twelve-to-eighteen months in prison. The report also indicated that Keough had no ability to pay a fine because of her limited resources and her anticipated restitution obligation. Keough objected to the conclusion in the PSR that she owed restitution to Robert and Tona White in the amount of $305,798.[1] (Doc. 63, p. 3.)

Prior to sentencing, Keough's counsel filed a sentencing memorandum seeking a downward departure from the applicable Sentencing Guideline range based on a claim of extraordinary family circumstances and extraordinary post-offense rehabilitation. (Doc. 63.) Keough sought a sentence of home detention. The government filed a sentencing memorandum which joined in Keough's request for a sentence of home detention. (Doc. 64.) The government sought no fine because of the large anticipated restitution obligation. In the memorandum, the Assistant U.S Attorney noted the existence of the dispute over the specific restitution figure, indicated that the government was attempting to contact the Whites "in hopes of making a final determination regarding restitution" prior to sentencing, and suggested that sentencing proceed as scheduled with a restitution

---

[1] The PSR noted that the restitution had already been made to the other seven victims of the scheme to defraud, including Ms. Ciongoli. Those other payments totaled $15,661.99.

4

hearing to be held at a later date. (Doc. 64, page 1.)

Sentencing of both Defendants was held on October 16, 2006. That morning, the government filed a supplemental memorandum seeking an order of restitution in the amount of $321,228 for which Defendants would be jointly and severally liable. (Doc. 65.) The memorandum was accompanied by an accounting of losses sustained by Mr. and Mrs. White. (Doc. 65-1.) At the sentencing, both Defendants objected to the amount of restitution reflected in the PSR, as well as the higher amount sought by the government. It appears from the transcript that defense counsel had not even received a copy of the government's memorandum. Defense counsel proposed that the Court schedule an evidentiary hearing on the restitution issue. (Doc. 92, p. 6.) The Court urged the parties to meet and confer to determine if there was some restitution figure the parties could agree upon without resorting to a full evidentiary hearing. (Doc. 92, pp. 14-15.) A recess was taken to permit the parties to do so. Ultimately, however, no final agreement was reached at that time. Chief Judge Sessions decided to proceed with the sentencing, proposing that an evidentiary hearing on the specific amount of restitution be held at a later time. Post-sentencing restitution hearings are permissible under 18 U.S.C. § 3664(d)(5).

With regard to Defendant Keough, the Court concluded that a departure from the Sentencing Guidelines was warranted, and imposed a sentence of a three-year term of probation, which included a six-month period of home detention and 200 hours of community service. Although the Court determined that Keough was unable to pay a fine

and thus did not impose a fine, the mandatory special assessment of $100 was imposed. Regarding Defendant Liska, the Court imposed a sentence of twelve months and one day, to be followed by a three-year term of supervised release. No fine was imposed. The Court reserved the issue of restitution, indicating in each Judgment that the restitution figure was "reserved for future hearing." (Doc. 67.) Chief Judge Sessions stated in the event the parties reached an agreement prior to the anticipated hearing the judgment would be modified. (Doc. 92, p. 49.) The remaining Counts of the Indictment were dismissed on the government's motion.

The Court scheduled an evidentiary hearing for November 2-3, 2006 to resolve the restitution dispute. (Doc. 71.) On November 1, 2006, however, a document styled "Stipulation Concerning Restitution" was filed with the Court. (Doc. 75.) The document, signed by the prosecutor and counsel for both Defendants (but not Defendants themselves) reflected an agreement between the government and Defendants "that the amount of the restitution owed by the Defendants to Tona and Robert White is $292,643.00." (Doc. 75.) This amount was significantly less than that initially sought by the government. The document also reflected an agreement between the parties that the Court could issue an "Amended Judgment and Statement of Reasons for Sentence" setting forth the agreed upon restitution figure. Consequently, on November 1, 2006, two Amended Judgments were issued. These Judgments ordered that Defendants were jointly and severally liable for restitution in the amount of $292,643, payable by lump sum and due immediately to Robert and Tona White. (Doc. 77.) Both the Stipulation and the

Amended Judgements were silent on the question of interest on the outstanding restitution obligation. The Amended Judgments reflected the same terms with regard to the other original sentencing provisions. No appeal was taken.

Nine months after the Amended Judgements were filed, Keough, through her counsel, filed a "Motion to Correct Clerical Error with the Court," pursuant to Fed. R. Crim. P. 36. In this July 16, 2007 motion, Keough sought relief from her obligation to pay interest on the restitution obligation. Citing the Court's earlier finding that Keough had an inability to pay a fine, Keough argued that she should be excused from the interest obligation. (Doc. 84.) The government objected to the motion, asserting that a motion to correct a clerical error under Rule 36 was not an appropriate method to address a claim of an unexpressed sentencing intention or an error purportedly made by the Court itself in imposting a sentence. The government also argued that an interest obligation on an order of restitution is mandatory under 18 U.S.C. § 3612(f)(1), unless a sentencing court makes an express finding that a defendant has the inability to pay interest under § 3612(f)(3). (Doc. 85.)

On September 27, 2007, the Court denied Keogh's motion, correctly concluding that Rule 36 may be utilized only to correct clerical errors. The Court also ruled that § 3612(f)(1) required Keough to pay interest on the restitution obligation. The Court noted that it had not considered the substantive issue of Keough's ability to pay interest on the outstanding restitution order, and invited review of the issue "if it is properly brought before the Court." (Doc. 86).

7

## II. The Instant Motion

On October 5, 2009, acting *pro se*, Keough filed a motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255. Therein, Keough requests that the Court "vacate restitution being paid to Mr Robert White + Tona White (wife)." (Doc. 89, p. 14.) Alternatively, Keough seeks the Court's permission "to do a volunteer project instead" of paying restitution to the Whites. (*Id.*) As grounds for the motion, Keough asserts that the restitution obligation owed to the Whites did not arise from the Count to which she pled guilty (Count 11). She also appears to argue that those Counts in the indictment which related to the losses sustained by the Whites were dismissed as part of the plea agreement, and therefore restitution is not appropriate. Finally, Keough contends that the money owed to the Whites "was dissolved I thought in a previous bankruptcy." (Doc 89, p. 5.)

The government has filed an opposition raising several defenses to the motion. Specifically, the government argues that the Court lacks jurisdiction; that the motion is barred by the one-year statute of limitations applicable to § 2255 petitions; and that the motion is subject to procedural default. In addition, although Keough does not seem to seek vacatur of her guilty plea, the government asserts that Keough's motion fails to set forth a claim that Keough's guilty plea was invalid.

The Court is advised that Keough concluded her three-year term of probation on October 15, 2009, and is therefore no longer under the supervision of this Court.

## III. Analysis

### A. The Motion is Untimely.

Keough's motion should be dismissed because it is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year statute of limitations for motions under 28 U.S.C. § 2255(f). *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998) (One of the purposes of the AEDPA was to create a statute of limitations for the "... filing of petitions for writs of habeas corpus and motions to vacate federal sentences."). The one-year period of limitations runs from the latest of four specified events laid out in § 2255(f). These events are: (1) the date on which the judgment becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f)(1)-(4).

Only subsections (f)(1) and perhaps (f)(4) are implicated here. Under subsection (f)(1), a § 2255 motion must be filed within one year of the date that the underlying conviction becomes final. Petitioner's Amended Judgment of Conviction was entered on November 3, 2006. She did not seek appellate review. For purposes of subsection (f)(1), "an unappealed federal criminal judgment becomes final when the time for filing a direct

9

appeal expires." *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005). The time for filing a direct appeal expires ten business days after the entry of judgment. *See German v. United States*, 209 F. Supp. 2d 288, 291 (S.D.N.Y. 2002) ("Case law is clear that, where no review is sought, the final date of the conviction is ten business days from the entry of the judgment of conviction, which is the deadline for filing a notice of appeal under Fed. R. App. P. 4(b)(1)."). Petitioner's conviction became final on November 14, 2006. Thus, the period of limitations under subsection (f)(1) expired on November 14, 2007. As noted above, Petitioner filed her motion on October 5, 2009, approximately twenty-three months after the expiration of this period of limitations.

The untimelines of Keough's petition should not be excused by equitable tolling of the period of limitations. Equitable tolling is only applicable in "rare and exceptional circumstances." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). The one-year statute of limitations of the AEDPA may be equitably tolled where "extraordinary" "exceptional" circumstances prevented the petition from being filed in a timely manner, but only if "the party seeking equitable tolling acted with reasonable diligence throughout the period he seeks to toll." *McGinnis*, 208 F.3d at 17. The burden is on the petitioner to show that the Court should toll the statute of limitations. *See Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir. 2001). Examples of situations where courts have tolled the statute include "instances of egregious attorney misconduct, the intentional confiscation of legal papers by prison authorities, serious physical or

mental illness which prevents the petitioner from filing, or where a petitioner, through no fault of his own, first learns of the outcome of a final appeal after the time for seeking habeas has expired." *Garcia v. Portuondo*, 334 F. Supp. 2d 446, 458-59 (S.D.N.Y. 2004) (footnotes and quotations omitted). This is not a rare or exceptional case. Keough, through her attorney, vigorously contested the amount of her restitution obligation. That dispute was resolved by way of a stipulation which reduced her obligation significantly from that initially sought by the government. Application of the equitable tolling doctrine here would be particularly inappropriate given that the District Court invited review upon proper submission of the question of Keough's ability to pay interest on her restitution obligation in its September 27, 2007 ruling denying Keough's Rule 36 motion. This order came well within the one-year statute of limitations.

### B. Challenges to Restitution Orders Are Not Cognizable under § 2255.

Keough's untimely challenge to her restitution order is also not cognizable under § 2255. Habeas petitions "may not be used to bring collateral challenges addressed solely to noncustodial punishments." *Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003); *Blaik v. United States,* 161 F.3d 1341, 1343 (11th Cir. 1998) (Section 2255 "cannot be utilized by a federal prisoner who challenges only the restitution portion of his sentence because § 2255 affords relief only to those prisoners who claim the right to be released from custody.") (internal quotations omitted). The Second Circuit in *Kaminski* held, in part, that a district court faced with a petitioner alleging ineffective assistance of counsel for failure to object to a restitution order was without subject matter jurisdiction to

11

determine whether, in fact, counsel was ineffective. *See Kaminski*, 339 F.3d at 85, n. 1. As the government correctly points out, this Court has expressly acknowledged the *Kaminski* rule, noting that the Second Circuit "has limited § 2255 to cases where the prisoner is challenging his custody." *United States v. Greer*, No. 2:95-CR-72, 2006 WL 978708, at *2 (D. Vt. April 10, 2006) (denying use of § 2255 to challenge restitution). This Court lacks subject matter jurisdiction to review the claim presented by Keough. Therefore, the motion should be dismissed.

The *Kaminski* court did leave open the possibility that a § 2255 motion may be appropriate where the petitioner alleges that a restitution order is so burdensome that it amounts to a restraint on his or her liberty. *Bimpeh v. United States*, No. 05-Civ-3011, 2008 WL 4861705, at *1-2 (S.D.N.Y. Nov. 10, 2008) (holding 15% of gross monthly income does not restrain liberty). A restraint-on-liberty claim has not been advanced here, and Keough has been making regular restitution payments in the monthly amount of $50. Such a sum cannot be said to be a restraint on Keough's liberty.

### C. Keough's Failure to Appeal Precludes Relief.

Keough's failure to pursue an appeal is also fatal to her petition. Section 2255 is intended to remedy fundamental defects in a criminal prosecution. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979). A court may grant relief under § 2255 only for constitutional errors, lack of jurisdiction, or an error of law or fact that constitutes "a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (quotation omitted). The

12

Supreme Court has defined a "miscarriage of justice" as a claim of actual innocence. *See United States v. Olano*, 507 U.S. 725, 736 (1993). Absent exceptional circumstances such as a miscarriage of justice, non-constitutional or non-jurisdictional questions are generally foreclosed to a § 2255 petitioner if not raised on direct appeal. *See Brennan v. United States*, 867 F.2d 111, 120 (2d Cir. 1989).

A § 2255 petition is not intended as a substitute for a direct appeal. *Marone v. United States,* 10 F.3d 65, 67 (2d Cir. 1993). Claims not raised on direct appeal are precluded from § 2255 review unless the petitioner can demonstrate cause for not taking an appeal and actual prejudice resulting therefrom, or that he is actually innocent. *See Fountain v. United States*, 357 F.3d 250, 254 (2d Cir. 2004); *United States v. Pipitone*, 67 F.3d 34, 38 (2d Cir. 1995). Keough pursued no appeal of her sentence. She has failed to demonstrate cause for her failure to appeal or prejudice resulting therefrom. Cause for failing to raise issues on appeal must consist of an external event or events that prevented the petitioner from having or possessing a basis to make her claims. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Keough asserts that she did not appeal or otherwise raise the issue because of "fear, stress[,]" and "being overwhelmed" at the time of her sentencing, and "being unaware that in lieu of restitution I could perform community service w/ 'Mr. White's approval'." (Doc. 89, p. 9.) Keough's claim of stress ignorance and fear is not an external event. *See Rodriguez v. United States*, 866 F. Supp. 783, 786 (S.D.N.Y. 1994) (citing *Douglas v. United States*, 13 F.3d 43, 47-48 (2d Cir. 1993) (superseded by statute on other grounds)). Here, Keough makes no claim that her

13

attorney, the government, or any other party interfered with her ability to bring an appeal. In fact the transcript of the sentencing shows that Keough was advised of her right to pursue an appeal. (Doc.92, p. 50.) Keough's claim is therefore procedurally barred by her failure to pursue an appeal.

**D.  Keough's Claims Are Substantively Meritless.**

Even if Keough were somehow able to overcome her procedural default, the statute of limitations, and her other legal hurdles, her motion is substantively meritless. Keough asserts that at the time of her sentencing "no *accurate* (sic) investigation of my financial situation was done by the probation department. I had no assets at the time." (Petition, page 5). Keough is clearly in error as the PSR stated that Keough had a "negligible net worth" and possessed no ability to pay a fine. This conclusion was not challenged by Keough at her October 16, 2006 sentencing hearing.

Keough also seeks an opportunity to perform community service in lieu of monetary restitution, as contemplated in 18 U.S.C. § 3664(f)(3)(B). But that statute requires the assent of the victim and no such assent has been shown here. Moreover, such in-kind services must be performed under the supervision of a probation officer, 18 U.S.C. § 3664(m)(2), and that cannot now occur given the expiration of Keough's probation term. Keough also argues that she did not plead guilty to any criminal conduct involving the Whites, and therefore the District Court did not have the authority to impose restitution for the losses caused by conduct for which she did not plead guilty. This argument, raised for the first time here, is meritless. The Mandatory Victims

Restitution Act requires an order of restitution for all victims of the offense. 18 U.S.C. § 3663A(a)(1). The statute defines the term "victim" as a person "harmed as a result of the commission of an offense ... including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern ." 18 U.S.C. § 3663A(a)(2). Thus, where the offense of conviction includes a scheme, conspiracy, or pattern as an element of the crime, the MVRA requires restitution for all individuals "directly harmed" in the course of that scheme, conspiracy, or pattern. *See United States v. Martin*, 195 F.3d 961, 968 (7th Cir. 1999); *United States v. Jackson*, 155 F.3d 942, 949 (8th Cir. 1998). This definition would encompass Keough's execution of her mail fraud scheme. Alternatively, 18 U.S.C. § 3663 permits the entry of an order of restitution "to the extent agreed by the parties in the plea agreement." Here, Keough, through her counsel, followed up on the Court's suggestion of seeking consensus and a stipulation as to the amount of the restitution obligation was reached. Keough was advised by Chief Judge Sessions that she would be required to make restitution to the victims of her offense. Keough agreed to make restitution to her victims, including the Whites, in the plea agreement. Though not signed by her, the stipulation was reached as part of Keough's effort to satisfy her obligation. Finally, Keough's assertion that she thought the White restitution obligation was satisfied by a bankruptcy discharge is legally insufficient for habeas relief, as a bankruptcy discharge does not dissolve a criminal restitution order. *United States v. Pepper*, 51 F.3d 469, 473-74 (5th Cir. 1995); *United*

15

*States v. Alexander*, 743 F.2d 472, 480-81 (7th Cir. 1984).

### E. Keough Has Other Remedies.

Although Keough is no longer under the supervision of this Court, she is not necessarily without other remedies. She is still obligated to make restitution payments despite completion of her probation term. A defendant's liability to pay restitution extends until twenty years after release from imprisonment or upon the death of the defendant. 18 U.S.C. § 3613(b), (f). In addition, restitution is to be paid in the shortest time in which full payment can reasonably be made. 18 U.S.C. § 3572(d)(2). Thus, when a defendant is no longer in custody or under probation or supervised release, a restitution order remains enforceable under the civil remedies of 18 U.S.C. § 3613. Modification of a defendant's payment schedule may be made in accordance with 18 U.S.C. § 3664(k). That section allows for notification of "any material change in the defendant's economic circumstances that might effect the defendant's ability to pay restitution." *Id.* A district court may adjust a payment schedule "as the interests of justice require." *Id.* Keough's most recent pleading may be liberally construed as a request for a modification under §3664(k). Treating the pleading as a §3664(k) motion would also satisfy the concerns expressed by the Court in denying Keough's 2007 Rule 36 motion to correct clerical error.

Finally, the Attorney General may, on his own, waive Keough's interest obligation if it appears that "reasonable efforts to collect the interest . . . are not likely to be effective." 18 U.S.C. § 3612(h). Defendants Liska and Keough have recently been

16

making a combined monthly payment of $104 per month. If they continue that pattern of payments, they will have paid only approximately $24,000 toward the $293,000 debt after twenty years, with the accrual of interest continuing. The Attorney General may very well conclude that Keough's interest obligation is uncollectible.

## Conclusion

For the reasons set forth above, I recommend that Keough's motion to vacate and correct her sentence (Doc. 89), filed pursuant to 28 U.S.C. § 2255, be DENIED. With regard to Keough's most recent submission (Doc. 100) only the sentencing court has jurisdiction to consider a motion filed under 18 U.S.C. §3664(k).

Dated at Burlington, in the District of Vermont, this 5th day of January, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rule 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a), 6(e).