UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:04-cr-98 |
| | ) | |
| KATHRYN KEOUGH | ) | |

## **OPINION AND ORDER**

The case centers on restitution payments ordered by this Court during the 2006 sentencing of defendant Kathryn Keough. Subsequent to her sentencing, Keough, whose father was a hostage during the Iran hostage crisis, was awarded funds under the Justice for United States Victims of State Sponsored Terrorism Act ("Terrorism Act"). The government contends that those funds are subject to offset under the Treasury Offset Program ("TOP"), and must be used to satisfy Keough's restitution obligation.

Two victims of Keough's crimes, Robert and Tona White, have informed the government that they do not wish to receive restitution payments. Accordingly, the government filed a motion to substitute the restitution payee, and the Whites subsequently expressed their desire for the funds to be paid to the Crime Victims Fund and three designated charities. Keough opposes the motion, arguing that Terrorism Act funds should not be transferred to the TOP, and that the attorneys who advocated for compensation on behalf of the hostage group and their families should receive 25% of the Terrorism Act funds. At the Court's request, the parties have briefed the following questions: (1)

whether the attorneys are entitled to 25% of any Terrorism Act fund ("Fund") award prior to any offset or payment to Keough; (2) whether the Whites have the right to designate alternate restitution payees, and if they do not, whether the funds go to the Crime Victims Fund by default, and (3) whether the government has the power to negotiate the terms of restitution with a defendant.  In a related question, the Court inquired whether the Whites' designation was based on full knowledge of the relevant facts.

For the reasons set forth below, the Court finds that the Terrorism Act funds are subject to offset, that those funds must be used to satisfy the restitution obligation, and that the Whites may designate the recipients of those restitution payments.  The restitution payments can be altered by the Court only in limited circumstances, none of which apply here, and the government cannot negotiate the amount of restitution owed. Accordingly, Keough's payments from the Terrorism Act shall be offset through the TOP to the extent that restitution is owed, and restitution shall be paid according to the instructions provided by the Whites as the victims of Keough's crimes.

## Background

In 2004, Keough was charged with defrauding numerous clients

of her home interior design business.  The largest losses were sustained by Robert and Tona White.  Pursuant to a plea agreement, Keough pled guilty to one count of mail fraud and, together with her co-defendant and husband Peter Liska, was ordered to pay restitution to the Whites in the amount of $292,643.00.  The payment was due in a lump sum, and interest continues to accrue.

The co-defendants initially made small payments to the U.S. District Court Clerk to be applied to their restitution debt, and the Clerk's Office sent corresponding checks to the Whites.  Those checks were not cashed, and the funds are currently being held in the Court's registry as unclaimed.  The Whites indicated at first that they did not want to receive restitution money.

In 2015, Keough became eligible to receive up to $600,000 under the Terrorism Act, as her father, William Keough, was a hostage during the Iran hostage crisis of 1979-81.  The Terrorism Act was established by Congress in 2015 to provide a fund to compensate certain victims of state sponsored terrorism, as well as spouses and children who were named in a specific class action law suit.  *See* 34 U.S.C. § 20144(c)(2)(C) ("For each child of a former hostage identified as a member of the proposed class described in this subparagraph, a $600,000 lump sum.").  The

authorized funds are not guaranteed, and are instead subject to availability through the ten-year life span of the Fund.

In 2016, with assistance of lawyers from the firm of Lankford & Reed, Keough filed a claim for recovery under the Terrorism Act.  Lankford & Reed had been working to obtain a recovery for the Iran hostages and their families since 1999.  In 2000, the firm brought a class action lawsuit against the Islamic Republic of Iran in the United States District Court for the District of Columbia.  Although Iran defaulted, the Justice Department intervened and opposed relief for the class, arguing that such relief would violate the Algiers Accords.  The litigation continued for over ten years, and Keough was a member of the plaintiff class.

In addition to engaging in the class action litigation, Lankford & Reed attorneys reportedly helped draft legislation and met with members of Congress.  Ultimately, Congress passed the Terrorism Act, which enabled a group of Americans to obtain compensation without having to secure a court judgment.  The Terrorism Act also placed a cap on attorneys' fees at 25% of claimant distributions.  34 U.S.C. § 20144(f)(1).  The Terrorism Act does not expressly provide for payment of fees directly from the Fund to those attorneys.

4

In 2017, the Fund found Keough eligible for payment. Because of the limited amount of money available for distribution, the Fund, which is administered by the Department of Justice, has distributed $81,921.60 of the allowed $600,000 to date. The government, pursuant to its power to enforce restitution orders through a TOP offset, *see* 18 U.S.C. § 3613, sent the funds to this Court's Clerk of Court. The funds remain in the Court's deposit fund account.

The government has been collecting restitution payments, unrelated to the Fund payment, from Keough and Liska since 2007. In light of the Whites' apparent refusal to accept the funds, the government filed a motion on July 21, 2017 to substitute the Crime Victims Fund as the restitution payee. Keough opposed the motion, arguing that the Court should (1) vacate the restitution order given the Whites' unwillingness to accept the money, (2) adjust the payment schedule under 18 U.S.C. § 3664, which allows for adjustment upon "notification of a material change in the defendant's economic circumstances," or (3) direct the funds to Keough's daughter, as she reportedly suffered harm as a result of her father's time in prison (Keough was sentenced to home confinement) and may therefore be considered a victim. Keough also argued that 25% of the money from the Fund should be paid to

Lankford & Reed for their legal advocacy.  ECF No. 113.

The government has responded to each point, arguing (1) that the restitution order cannot be vacated, (2) that there is no basis for modification when the defendant's financial situation has *improved*, and (3) that Keough's daughter is not a victim of her mother's offense.  ECF No. 114.  With respect to attorneys' fees, the government argues that any such fees must be paid by Keough directly, and not from money offset to pay her restitution obligation.  In a sur-reply memorandum, Keough has contested the validity of the TOP offset, claiming that it was done without proper notice or court approval.  Keough has also offered significant detail about the efforts by Lankford & Reed to secure payments for the Iran hostages and their families.

On October 24, 2017, the government notified the Court that the Whites intended to donate the restitution money to several charities.  Both the government and the Whites were reportedly unaware of Keough's entitlement to money from the Fund until Keough filed her opposition to the government's motion to substitute the restitution payee.  With the knowledge that full restitution was now more likely, the Whites would be notifying the U.S. Attorney's Office of their choice of charities.

The government also addressed the issue of notice,

contending that Keough was provided notice of her inclusion in the TOP program on September 14, 2010. Within 60 days of that notice, Keough reportedly failed to pay her debt in full, make payment arrangements, or dispute the TOP certification. *See* 31 U.S.C. § 3716(a) (giving debtors the opportunity to inspect the agency's records, review the agency's decision, and enter into a written agreement to repay the amount of the claim); 31 C.F.R. § 285.5(d)(6). After notice and certification, TOP payments are automatic and no additional notice is required. *See* 31 U.S.C. § 3716. Court approval is also not required.

On October 27, 2017, the Whites executed an assignment of restitution payments indicating their desire for the funds to be paid in four equal parts to the Crime Victims Fund and three charities: City Year, Home for Little Wanderers, and Year Up. That same day, Keough moved to stay the distribution of funds and for leave to depose the Whites "to discover[] exactly what transpired between the Government and the Whites and what the Whites' current position is." ECF No. 122. The government has opposed that motion, arguing that there is no basis for deposing the Whites since their position on restitution is clear, and the Crime Victims Rights Act grants victims the "right to be reasonably protected from the accused." 18 U.S.C. § 3771(a)(1).

7

On February 22, 2018, the Court held a status conference. Counsel for Keough argued, among other things, that her recovery under the Act should not be subject to offset because it constitutes capital rather than income. Keough's counsel also argued that Lankford & Reed attorneys are entitled to their 25% payment prior to any government offset. The Court inquired about whether the Whites were authorized to assign their restitution payments to charities; if they were not, whether they would want all of the funds to go to the Crime Victims Fund; and whether they had all of the information necessary to make these decisions. The Court then ordered the parties to jointly draft a letter to the Whites that included all of the relevant factual information. Subsequent to the hearing, the parties were unable to agree on a draft letter, and the Court ordered the government's proposed letter to be sent to the Whites. That letter was sent approximately one year ago, and there has reportedly been no response from the Whites.

The parties' latest filings address issues identified by the Court at the February 22, 2018 hearing: (1) whether the attorneys are entitled to 25% of any Fund award prior to TOP offset or payment to Keough; (2) whether the Whites have the right to designate alternate restitution payees, and if they do not have

8

that right, whether the funds go to the Crime Victims Fund by default; and (3) whether the government has the power to negotiate the terms of restitution with a defendant.

## Discussion

**I. Attorneys' Fees**

Lankford & Reed, through Keough's counsel, argues that it is entitled to 25% of the Terrorism Act funds. The firm further submits that it should receive payments from the Fund prior to any payment to Keough or offset under the TOP. Accordingly, the firm asks this Court to disburse 25% of the $81,921.60 being held in the Court's deposit fund account. The government argues that federal law requires the restitution debt to be paid before any disbursements are made.

Under the terms of the Terrorism Act, funds are to be paid by a Special Master directly to the claimant "or, if that person is deceased, to the personal representative of the estate of that person." 34 U.S.C. § 20144(d). According to the "Frequently Asked Questions" ("FAQ") document on the Fund's website, *see* http://www.usvsst.com/faq.php, a claimant may direct payments to certain accounts, including an attorney's IOLTA account. *See* FAQ 4.17. The FAQ document makes clear that the Fund does not pay

attorneys' fees directly.  *See* FAQ 4.20 ("Will the Fund pay my attorneys' fees?  No.  The Fund will not pay attorneys' fees.  The Fund will send payment to the account designated for payment by the claimant.").

Lankford & Reed argues that, by statute, attorneys are entitled to 25%.  Although the Terrorism Act does cap attorney's fees at 25%, *see* 34 U.S.C. § 20144(f)(1), a cap is not the same as an entitlement.  Nowhere in the statute or the related guidance is the Fund directed to apportion payments to attorneys.

Furthermore, federal law is explicit about the direct offset for any federal debts.  The Debt Collection Improvement Act of 1996 ("DCIA"), 31 U.S.C. § 3716(c), requires the Department of Justice to offset federal payments in order to collect delinquent debts owed to the government.  That offset necessarily occurs prior to any payments to claimants or their designees.  Although some sources of payment from the government are exempt from offset, those sources are specifically listed in a document distributed by the government.  ECF No. 132-2.  Payments from the Fund are not listed as exempt.  *Id.*

Keough was notified when she applied for payment from the Fund that any delinquent debts would be offset.  A Privacy Act notice on the Fund application form informed her that information

regarding her claim would be disclosed by the Department of Justice to the Treasury Department "to ensure that any recipients of federal payments who also owe delinquent federal debts have their payment offset or withheld or reduced to satisfy the debt." The FAQ similarly informed applicants that under the DCIA, payments from the Fund would be offset by federal debts. *See* http://www.usvsst.com/docs/Payment_Information_FAQs.pdf (FAQ 13).

Given the specific provisions for offset prior to payment to the claimant (or the claimant's designee), and the clear notice provided to claimants regarding such offset, the Court sees no basis for allowing a payment of attorneys' fees prior to an offset. Keough's restitution payment, as ordered by the Court, was due immediately upon her sentencing. That debt must be satisfied before Keough or her attorneys are paid.

The government submits that this conclusion is consistent with the federal tax code. In *CIR v. Banks*, 543 U.S. 426, 436-37 (2005), the Supreme Court held that the attorneys' fees portion of a litigation recovery is taxable to the winning plaintiff. Thus, assuming a contingency fee agreement, that agreement acts only as a lien and not as a portion of the plaintiff's award. The same principle applies here: the attorneys appear to have a lien, but are not entitled to a portion of the payment coming

11

directly from the Fund.  Indeed, federal tax law dictates that with respect to an attorney's lien on a "judgment or amount," that lien is junior "to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States."  26 U.S.C. § 6323(b)(8).

Lankford & Reed argues that its attorneys have an equitable interest in payments under the "common benefits doctrine."  *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970).  The common benefits doctrine, also known as the common fund doctrine, "permits a prevailing party—whose lawsuit has created a fund that is intended to benefit not only that party but others as well—to recover, either from the fund itself or directly from those others enjoying the benefit, a proportional share of the attorney's fees and costs incurred in the lawsuit."  *Guiel v. Allstate Ins. Co.*, 756 A.2d 777, 780 (Vt. 2000); *see also Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir. 1996).  Nothing in the common benefits doctrine forbids the government from first offsetting payments to cover the prevailing party's federal debts.  *Cf. Delgadillo v. Astrue*, 601 F. Supp. 2d 1241, 1247 (D. Colo. 2007) (permitting Treasury offset of EAJA fee awards).

As noted above, Keough's counsel argued in court that her

fund payments should be considered capital rather than income. Counsel analogized the Fund payments to compensation for physical harm resulting from an accident. Keough's recovery from the Fund, however, is not intended to compensate physical harm. Furthermore, even if the Fund payments were akin to a personal injury settlement, such settlements are not exempt from collection under the federal tax code. *See* 26 U.S.C. § 6334(a).

For each of these reasons, the Court finds that Keough's Fund payments are being properly offset, and that Lankford & Reed attorneys are not entitled to payment directly from the Fund prior to such offset.

## II. Whether Victims May Designate Alternate Payees

The Whites have expressed their wish for Keough's restitution payments to be directed to the Crime Victims Fund and three specified charities. The Mandatory Victims' Restitution Act ("MVRA") allows crime victims to assign their restitution rights to the Crime Victims Fund. *See* 18 U.S.C. § 3664(g)(2). The MRVA also allows crime victims to designate third-party recipients. 18 U.S.C. § 3663A(b)(1)(a) (requiring the criminal defendants "to return the property to the owner or someone designated by the owner"); *see also United States v. Okun*, 2009

13

WL 2762620, at *3 (E.D. Va. Aug. 27, 2009) ("the MVRA is best read to permit the sale or assignment of restitution claims to third parties").

Keough has asked the Court to consider whether all third parties are appropriate designees, citing the possibility of restitution payments to political candidates, private corporations, or religious entities. The MVRA provides no restrictions on what sort of person or organization may be "designated by the owner" under 18 U.S.C. § 3663A(b)(1)(a). Accordingly, courts have allowed restitution assignments to a variety of entities. *United States v. Turner*, 312 F.3d 1137, 1144 (9th Cir. 2002) (ordering probation office to honor banks' assignments of restitution payments to defendant's childhood friend); *Okun*, 2009 WL 2762620, at *2-*3 (victims of financial crimes sold claims to claim aggregators). In *Turner*, for example, the Ninth Circuit opined that "the [victim] banks' sale of their restitution asset is the banks' business." 312 F.3d at 1144.

Here, without any statutory restrictions on assignments of restitution, the Whites are similarly empowered to assign their restitution payments. As to the Court's question of whether the assignment has been knowing and voluntary, the Whites have not

14

responded to the most recent correspondence from the parties. Prior to that correspondence, the Whites made clear their wish for restitution payments to be divided among the Crime Victims Fund and selected charities. In keeping with the plain language of the MVRA, the government must honor those wishes.

**III. Whether the Government May Negotiate Lower Restitution**

The final question is whether the government has the ability to reduce or modify Keough's restitution obligation. Courts have rejected modification by agreement, acknowledging that restitution orders are mandatory and final, and may only be altered by the Court in very limited circumstances under 18 U.S.C. § 3664. *See, e.g., United States v. Witt*, 2017 WL 2225226, at *2 (D. Kan. May 19, 2017) (declining to honor agreement between victim and defendant to reduce amount of restitution); *see also United States v. Johnson*, 378 F.3d 230, 244 (2d Cir. 2004) (imposing restitution notwithstanding victims' desire to decline payment). With respect to the government specifically, the U.S. Attorney's Office is required to seek restitution for victims, *see* 18 U.S.C. § 3612, and is not

authorized to modify such restitution.[1]

Under Section 3664(k), a court may adjust a restitution payment schedule "as the interests of justice require" if a defendant experiences "a material change in [her] economic circumstances that might affect [her] ability to pay restitution." 18 U.S.C. § 3664(k). Here, there are no grounds for an adjustment, as the Fund payments have the potential to only improve Keough's economic circumstances. Accordingly, even if the parties were to request a modification as a result of negotiations, there would be no basis for enacting such a change.

## Conclusion

For the reasons set forth above, the government's motion to substitute the restitution payee (ECF No. 106) is **granted** insofar as the payees will be designated as the Crime Victims Fund and the charities identified by the Whites. Keough's motion to stay distribution of funds and permit deposition of the Whites (ECF No. 122) is **denied.** Keough's motion for a pretrial conference (ECF No. 133) is **denied** as moot.

---

[1] The Attorney General may only waive interest or penalties if "reasonable efforts to collect the interest or penalty are not likely to be effective." 18 U.S.C. § 3612(h).

16

DATED at Burlington, in the District of Vermont, this 15th day of April, 2019.

/s/ William K. Sessions III  
William K. Sessions III  
District Court Judge